1  DUANE M. GECK (State Bar No. 114823)
   DAVID E. PINCH (State Bar No. 124851)
2  DONALD H. CRAM (State Bar No. 160004)
   SEVERSON & WERSON
3  A Professional Corporation
   One Embarcadero Center, Suite 2600
4  San Francisco, CA  94111
   Telephone:  (415) 398-3344
5  Facsimile:  (415) 956-0439

6  Attorneys for Plaintiff
   FORD MOTOR CREDIT COMPANY,
7  LLC, a Delaware Limited Liability
   Company
8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11

12 | FORD MOTOR CREDIT COMPANY, LLC, a Delaware Limited Liability Company, | Case No.:  C 07-03301 JW |
   | --- | --- |
   | Plaintiff, | **FORD MOTOR CREDIT COMPANY, LLC'S OPPOSITION TO APPLICATION OF DEFENDANTS TO SET ASIDE DEFAULT** |
   | vs. | |
   | LEWIS FAMILY ENTERPRISES, INC. dba BOB LEWIS LINCOLN MERCURY, a California Corporation, and STEVEN ROBERT LEWIS, an individual, | Hearing Date:  October 31, 2007<br>Time:  9:30 AM<br>Dept.:  4<br>Judge:  Magistrate Richard Seeborg |
   | Defendants. | Complaint filed:  June 22, 2007<br>Trial Date:  Not set |

10872/0122/644185.1

## I.   INTRODUCTION

Ford Motor Credit Company, LLC, a Delaware Limited Liability Company ("Ford Credit"), opposes the application of defendants Lewis Family Enterprises, Inc. and Steven Robert Lewis ("Lewis") (collectively, Lewis Family Enterprises, Inc. and Lewis shall be referred to as "Defendants") to set aside the default entered against them on August 1, 2007. The Defendants simply have not met the burden imposed upon them under Fed. Rules Civ. Proc. 55(c) and 60(b) to set aside the default.

While Defendants argue that they should be relieved from the default because of "excusable neglect", they state that they knew about the lawsuit and chose not to respond because they had hoped to pay their obligation to Ford Credit through a sale of the dealership to a third party. In other words, because they expected to have the means to pay the debt shortly, they saw no reason to respond to the lawsuit. By making this argument, they acknowledge the legitimacy of the debt owed to Ford Credit and that they actively chose not to respond to the lawsuit.

Furthermore, Ford Credit denies that the Defendants have shown the existence of a meritorious defense. The mere attachment of a proposed answer with boilerplate affirmative defenses without alleging any factual basis to substantiate the claimed defenses does not meet the standard of establishing a meritorious defense.

## II.   STATEMENT OF PLEADINGS

On June 22, 2007, Ford Credit filed this action against the Lewis Family Enterprises, Inc. dba Bob Lewis Lincoln Mercury (the "Dealership"), following the Dealership's breach of its breach of contract under an inventory finance agreement and a loan for working capital. Ford Credit also sued Lewis as the guarantor of these obligations. There is no dispute that the Dealership entered into an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated December 12, 2003, ("Wholesale Agreement") under which Ford Credit provided inventory financing. There is also no dispute that Ford Credit and the Dealership entered into a Master Loan and Security Agreement and Supplement thereto ("Capital Loan Agreement") under which Ford Credit advanced $800,000.00 to the Dealership as working

- 1 -

capital. The Dealership admits to these loans at paragraphs 6-10 inclusive of its proposed Answer and at paragraph 5 of the Declaration of Lewis submitted in support of the application to set aside default. Lewis also admits executing and delivering to Ford Credit a Continuing Guaranty. See paragraph 16 of Defendants' proposed Answer.

The Complaint alleges that as of June 13, 2007, the Dealership had sold 22 vehicles that Ford Credit had financed under the Dealership's Wholesale Agreement and for which the Dealership had failed to pay Ford Credit upon sale of those vehicles. Again the Dealership admits these facts in its proposed Answer at paragraph 20.

The Defendants allege that despite being served with the Complaint, they did not respond to the Complaint because they were in negotiations to sell the Dealership's franchise and they believed that the money owed to Ford Credit would be satisfied from the sales proceeds of the franchise. (See Lewis Declaration at ¶¶5-7).

Lewis states that Defendants did not file an answer to the complaint because, due to the pending sale, he believed that Ford Credit "would stand down." He makes this assertion stating that he came to this belief following a conversation he had with a then employee of Ford Credit. He does not say that he got that belief following his discussion with counsel for Ford Credit. He continues to assert that this belief was reasonable after Ford Credit obtained a writ of possession against the Dealership. Lewis continues to assert that he did not oppose to the application for a writ of possession or object to the order that was entered, because he continued to hope that his sale of the franchise would satisfy his monetary obligations to Ford Credit. (See Lewis Declaration ¶11).

Despite Lewis' claims that he was lulled into not filing his answer, the Declaration of Donald H. Cram shows the opposite. Cram declares that he sent an email to Lewis on June 26, 2007, that Ford Credit would be seeking an Ex Parte Order for a Writ of Possession. This first email included copies of all of the pleadings Ford Credit would be filing with the court. (Cram Declaration ¶4, Exhibit "A"). Lewis acknowledges receipt of this correspondence. (Lewis Declaration ¶7).

1  Next, on July 2, 2007, Cram contacted Lewis again by email to advise him that the Court issued a temporary restraining order to hold all sales proceeds and he asked that Lewis or his attorney contact him. (Cram Declaration ¶6, Exhibit "B").

On July 6, 2007, Cram contacted Lewis to advise him that the Court changed the date of the hearing on the Writ of Possession to August 2, 2007. (Cram Declaration ¶7, Exhibit "C"). And on July 11, 2007, Cram contacted Lewis by email that the Court had changed the date of the hearing on the Writ of Possession to August 1, 2007. (Cram Declaration ¶8, Exhibit "D").

But most telling, Defendants had an attorney contact Cram on August 8, 2007, who stated that Defendants were in a buy-sell arrangement and that therefore Defendants would not be going to the expense of moving to set aside the default and either confirming or requesting that Ford Credit would not take any additional steps to enter judgment. (Cram Declaration ¶9, Exhibit "E"). The next day, Cram responding by letter clearly states that Ford Credit had not agreed to anything and that it would pursue its rights including enforcing the Writ of Possession. (Cram Declaration ¶10, Exhibit "F").

Yet, despite notice to Defendants that Ford Credit was not agreeing to "stand down", Defendants still chose not to move to set aside the default until September 7, 2007.

Lastly, Defendants asserts that they have a meritorious defense to the Ford Credit Complaint. But they merely attach a proposed Answer. Defendants do not assert any facts that would support a meritorious defense. Instead, the proposed Answer admits to the existence of the contracts and the Defendants' defaults. Lewis admits that the court authorized a writ of possession and that Ford Credit recovered possession. He admits that Defendants owe money to Ford Credit.

### III.   STANDARDS FOR SETTING ASIDE A DEFAULT

The Federal Rules of Civil Procedure 55(c) provides the basis by which the court may set aside a default entered against a party. It provides:

> **55(c) Setting Aside Default.** For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

- 3 -

10872/0122/644185.1   FORD MOTOR CREDIT COMPANY, LLC'S OPPOSITION TO APPLICATION OF DEFENDANTS TO SET ASIDE DEFAULT
Case No.: C 07-03301 JW

The Defendants cite to *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922 (9th Cir. 2004) as providing the standard by which the court should analyze an application to set aside the entry of default against a party. *Franchise Holding* holds that:

> The "good cause" standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b). See *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir.2001). The good cause analysis considers three factors: (1) whether HRG engaged in culpable conduct that led to the default; (2) whether HRG had a meritorious defense; or (3) whether reopening the default judgment would prejudice Franchise Holding. See *id*. As these factors are disjunctive, the district court was free to deny the motion "if any of the three factors was true." *American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir.2000)*.

*Franchise Holding,* at 925-6.

Ford Credit agrees with Defendants that this is the appropriate standard and the appropriate case law to analyze Defendants' application in this case. As will be shown below, the facts of this case are remarkably similar to the facts of *Franchise Holding* and that therefore the default should not be set aside.

### IV.   GROUNDS TO DENY APPLICATION TO SET ASIDE DEFAULT

#### A.   Defendants are Culpable for Their Failure to Answer the Complaint

The Defendants argue that they are not culpable for their failure to file an answer because they were in negotiations to sell the franchise and that there would be sufficient proceeds from the sale of the franchise to pay the amounts they owed to Ford Credit. This is nearly identical to the arguments made by the defendants in the *Franchise Holding* case cited above.

In *Franchise Holding* the defendants argued that they were in negotiations to settle the lawsuit and because of that they had entered into a side-agreement with counsel that they would have an extension of time to answer the complaint. The court found that the defendant had actual notice of the lawsuit and despite the charge of a "side-agreement" the defendant's "failure to seek an extension of time for filing a responsive pleading went to [the defendant's] 'culpable conduct.'" *Franchise Holding,* at 926 ("If a defendant "has received actual or constructive notice of the filing of the action and failed to answer," its conduct is culpable." (citation omitted)).

- 4 -

Here, Defendants acknowledge that they had actual notice of the lawsuit, but they chose not to take action because they were in negotiations with a third party to purchase the franchise. Despite Lewis' claim that a former employee of Ford Credit advised him that Ford Credit "would stand down" (whatever that means), the Defendants did not contact Ford Credit's counsel. Meanwhile, Donald H. Cram, as one of the attorneys for Ford Credit, contacted Lewis by email on June 26, 2007, July 2, 2007, July 6, 2007, and July 11, 2007, advising that Ford Credit would continue to pursue its remedies and to have counsel contact him. (Cram Declaration ¶¶6-8, Exhibit "A" – "D" inclusive).

Most importantly, Cram received a letter from David J. Stock ("Stock"), as Defendants' counsel. Stock advises that Lewis told an employee of Ford Credit that Defendants were close to executing an agreement to sell the assets of the Dealership and that Ford Credit's actions "would require Mr. Lewis to incur the added expense of retaining counsel to take steps to set aside the default, etc." Stock concluded "Mr. Lewis is not moving forward to set aside the Default or move for reconsideration of the orders entered at this time." (Cram Declaration ¶9, Exhibit "E").

Cram testifies that he sent a reply letter to Stock the following day advising him that Ford Credit had, through him, repeatedly advised Lewis that it was not holding off on enforcing its rights and would continue to enforce its writ of possession. (Cram Declaration ¶10, Exhibit "F").

**B.    Excusable Neglect Standard under Federal Rule Civil Procedure 60(b)**

The Court sitting in *Franchise Holding* also ruled that the "culpability" requirement of Rule 55(c) is the same as the "excusable neglect" requirement under Rule 60(b) and therefore no separate analysis needs to be made – one for the other. *Franchise Holding,* at 927.

Because Ford Credit has shown that Defendants were culpable for the entry of default against them (see section A above), Defendants cannot meet the standard that excusable neglect establishes grounds to set aside the default and allow them to answer.

**C.    Defendants have not Established a Meritorious Defense**

Lastly, Defendants do not established a basis to set aside the default due to a showing of a meritorious defense. Ford Credit references back again to the opinion issued in *Franchise*

- 5 -

10872/0122/644185.1
FORD MOTOR CREDIT COMPANY, LLC'S OPPOSITION TO
APPLICATION OF DEFENDANTS TO SET ASIDE DEFAULT
Case No.: C 07-03301 JW

*Holding.* There the Court reasoned that the defendants declaration that they delayed in answering a complaint because they were in the midst of settlement negotiations that would resolve the entire lawsuit "' conceded the question of liability,' which went 'a long way to suggesting that at least as to liability the defendant has no meritorious defense.'" *Franchise Holding,* at 926.

The same is true here. The Defendants admit to the underlying loan agreements and that they had defaulted under those agreements by selling vehicles out of trust. (See Proposed Answer ¶¶ 6-10 and 20). The Defendants do not deny the obligations but merely state that if the franchise could be sold, the Dealership would have the funds to pay the amounts it owes to Ford Credit. (See Lewis Declaration ¶5). These admissions essentially concede the question of liability and go a long ways to suggesting that at least as to liability the defendants have no meritorious defense.

Defendants erred in choosing to rely on the proposed sale of the business to satisfy the demands of the lawsuit. The business was not sold and the debt is still owed. But making a strategic error is not grounds to set aside a default. *Sadowski v. Bombardier Ltd.,* 539 F.2d 615, 618 (7th Cir. 1976) ("Rule 60(b) is not to be invoked to give relief to a party who has chosen a course of action which in retrospect appears unfortunate or where error or miscalculation is traceable really to a lack of care.").

Nor are defendants saved by the inclusion of a proposed Answer. The Answer contains a collection of boilerplate affirmative defenses, but neither the Answer itself nor the Lewis declaration state any facts upon which to base the alleged defenses. Again the ruling in *Franchise Holding* directly addresses this point. It states:

> To justify vacating the default judgment, however, HRG had to present the district court with specific facts that would constitute a defense. *See Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir.1969). HRG never did this. Instead, it offered the district court only conclusory statements that a dispute existed. A "mere general denial without facts to support it" is not enough to justify vacating a default or default judgment.

*Franchise Holding,* at 926.

Defendants have not shown the existence of a meritorious defense that would justify the court setting aside the entry of default.

## V.    CONCLUSION

Ford Credit asserts that there are no grounds to set aside the default in this case. Defendants are culpable for the failure to file a responsive pleading. They knew of the lawsuit, were advised repeatedly by Ford Credit's attorney to respond to the lawsuit or obtain counsel, and still chose not to answer the Complaint. More importantly, Defendants admit to the basic underlying facts of the Complaint and have proposed no facts to establish any meritorious defense to the Complaint. Ford Credit respectfully requests that the Court deny this application to set aside the default entered against defendants Lewis Family Enterprises, Inc. and Steven Robert Lewis.

DATED:  October 8, 2007                           Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation


By:  /s/ Donald H. Cram, III
         Donald H. Cram

Attorneys for Plaintiff
FORD MOTOR CREDIT COMPANY, LLC f/k/a
FORD MOTOR CREDIT COMPANY, a
Delaware Limited Liability Company